The defendants Cotton and Jackson, in their joint answer, admitted all the allegations of the bill. They further stated that they, together with Mordecai, proved the will at February Term, 1823, of Edgecombe County Court; that the defendant Burton had, from the death of the testatrix, declared his intention to accept the office of executor, but was unable to join in that probate; that he proved the will at the succeeding August term; that the principal part of the estate of the testatrix came to their hands; that the defendant Burton owed the testatrix $2,889.50, with interest from 22 May, 1821, secured by a promissory note of that date; that the testatrix resided in Edgecombe, but had a small plantation in Warren County, in the vicinity of Burton's residence; that personal property on that estate was sold to the amount of $683.21, of which Burton purchased, to the amount of $420.85, and that the notes given by the purchasers at that sale, including his own, were handed to him for collection. They submitted to an account, but insisted that they were in no manner liable for the debt due from Burton to the testatrix, in her lifetime, nor with the collections, including his own (52) purchases, made by him since her death.
It is unnecessary to state the answer of the defendant Burton, as he was examined before the commissioner, and the facts stated in his answer appear in the report.
By an interlocutory decree, a reference was ordered of the accounts of all the defendants and the commissioner reported that the defendants Cotton and Jackson had received of the assets of their testatrix, including interest, $20,853.03; that after the payment of all the debts there remained in their hands, subject to the payment of legacies, $18,351.91; that they had paid legacies, including interest upon the payments, to *Page 52 
the amount of $8,156.98, and after allowing them commissions on the sum of $41,707.86, the amount of their receipts and payments, including legacies and interest at the rate of 5 per cent, there was a balance in their hands of $8,109.54, and that he had rejected a charge made by them of $473.20, for the expenses of two journeys to the State of Tennessee, upon the idea that the defendants were not entitled to their expenses, and also to full commissions: That the defendants Burton had received from the defendants Cotton and Jackson, including interest, $930.68, in notes due for purchases made at the residence of the testatrix near his house, and had disbursed for debts due from the testatrix the sum of $852.63; and that, after allowing him commissions on these disbursements, there was due him a small sum, to be applied to the payment of his note above mentioned. That as to the note of the defendant Burton, due the testatrix in her lifetime, Burton was a gentleman of large property at the death of the testatrix; that shortly thereafter his affairs became embarrassed, and he was forced to make a general assignment of his property, and was now insolvent; that the testatrix had in her will left him all her slaves, thirty in number; that these slaves were upon her estate in Warren, and that the defendants Cotton and Jackson, assenting to the legacy, Burton had taken (53) them into his possession; that they had been sold at execution sales of Burton's effects, and that a part of them were purchased by Cotton.
The plaintiffs excepted to the report:
1. Because the commissions allowed to the defendants Cotton and Jackson were too large, and were allowed upon a wrong principle.
2. Because the commissioner had not charged the defendants Cotton and Jackson with the note for $2,889.50, and the interest thereon, due from the defendant Burton to the testatrix in her lifetime.
3. Because the commissioner had not charged the defendants Cotton and Jackson with the note of the defendant Burton for $420.85, and the notes placed by them in his hands for collection.
The other exceptions of the plaintiffs related to the account of the defendant Burton.
The defendants Cotton and Jackson excepted to the report because the commissioner had rejected the charge of $473.20, for the expenses incurred.
The only exception on the part of the defendants is that the commissioner rejected a credit claimed by them for actual expenses *Page 53 
and charges paid. The fact of payment and fairness of the payments are not disputed. The commissioner decided on the idea that the allowance could not be made because the commissions covered the claim. But he was wrong; for the act of 1799 (Rev., ch. 536) has an express proviso, that the executor may retain for charges, over and above his commissions. The charges of traveling, employing agents, or costs of suit might overgo the commissions; which are designed for the executor's risk and labor. The exception must be allowed.
The plaintiffs have taken several exceptions. One relates to the commissions allowed Cotton and Jackson. The commissioner has allowed 5 per cent on the receipts, and the interest thereon up to taking the account, and also 5 per cent upon the disbursements in payment of debts, and on payment to the legatees, and the balance now in the hands of the executors. Commissions cannot be given on the payments to the legatees, made or to be made. Potter v. Stone, 9 N.C. (55) 30. They may, in the discretion of the court be allowed on the other items; but as actual expenditures are claimed and given here, a commission of 5 per cent on the principal sums received, namely, $18,711.65, is an adequate compensation. This exception is, therefore, allowed.
Another, and the most important, exception is that which relates to the debt due from Burton to the testatrix at her death. He owed her upon his own bond the sum of $2,889.50, and hath become insolvent. The commissioner has not charged the other executors with that debt, and this exception is founded on that omission. It is said they are liable because the debt was lost by their culpable negligence, and evidence has been taken to show that Burton's circumstances became doubtful, and then ruinous, after the death of the testatrix, and that Cotton and Jackson were aware of it. The circumstances have been commented on. They are not gone over again now because the decision is on a general principle. Though if the defendant's liability depended on their knowledge and bona fides, it might be difficult to charge them here; for, according to the evidence, Mr. Burton's failure was sudden and caused by unforeseen circumstances, and at least unknown to the world and his coexecutors, until he made a general assignment of a very large estate, and converted himself, in an instant, from a man apparently affluent into an insolvent one. But it is a new position that one executor is responsible for the acts of another, where the former has done nothing. The rule has been often laid down that he is liable, not for standing by, but for parting with assets once under his control. An executor is not liable for money never in his power, upon the insolvency of a coexecutor with the effects in his hands. Suppose a *Page 54 
testator appoints an executor insolvent at the time. Can a coexecutor say he shall not prove the will, nor receive the assets, contrary to the appointment in the will? By what authority can he say the testator had a false confidence? But it is said if the insolvency take place afterwards, it is the duty of the other to receive the fund, because he is a (56) trustee, especially where there are infants and others not sui juris. That the legatees themselves may come into this Court to secure their legacies is very true. Upon that is bottomed the argument for the power of the coexecutor, and, thereupon, his duty. That does not follow. That an executor is trustee is not denied. But how far, for what? is the question. He is trustee for what is in his hands, or what has been in his hands, or within his separate power and control. He is not the curator or guardian of the legatees, as against the insolvency of the other executor. It may be doubted whether he could call the other to account. Upon what principle could he ask the other to pay him the money in his hands, and thereby make him liable for his own insolvency, which may happen? Both, as against each other, derive their power from the same source, and hold an equal measure of it. But there is no necessity for such an obligation on the executor; for since the legatees may themselves sue, their redress is in their own hands; and they cannot complain that an executor did not sue, while they themselves lay by. But if one executor may call for the funds out of another's hands, is he bound to do it? The very power of the legatee, and his own laches, is an excuse for the executor. There is no need of a suit by both, and the legatee's example justifies the executor. But the want of a precedent is decisive upon this question. No case has been cited or found that looks that way. Those mentioned are altogether upon different points. Atkinson v. Henshaw, (2 Ves. and Bea., 85), and Ball v.Oliver, (2 id., 95), established only that pending a litigation for probate in the ecclesiastical court the chancellor, upon a bill by anybody interested, will appoint a receiver, as a better security than an administration pendente lite. But that does not establish that after probate the executor shall not receive the assets, because he is insolvent, though the testator said he might, and the legatees are willing he should, or, at least, do not ask that he shall not. Lepard v. Vernon, 1 Ves. and Bea., 51, is a case where one executor (not insolvent) assigned a (57) debt, not negotiable, and the debtor refused to pay, but brought the money into court. Upon the bill of the other executors, it was decreed to them for the general creditors, against the assignee, who had no legal battle, and no higher equity than the general creditors. But that is no authority that the executor, whose assignment passed nothing, could not have received from the debtor himself, if such had been the fact. This being a *Page 55 
debt from the executor himself, due to the testatrix in her lifetime, became assets in the executors' hands, upon her death, for the satisfaction of creditors and legatees. If he had paid it to the other executor, it would not have excused him to the creditors; and there ought, therefore, to be no means of compelling such a payment. The delivery of the negroes bequeathed to Burton did not alter it. He had, as executor, the same right to them that they had; and it was a specific legacy, which does not abate. This exception is, therefore, overruled.
The other exceptions relate to transactions occurring after the death of the testator. Before Burton qualified as executor he purchased at a sale made by the others to the amount of $420.85; and the executors also left with him, as an agent, for collection, the bonds of other persons residing in his neighborhood, which he received. The whole, including his own purchases and the interests, makes the sum of $930.68. This the commissioner has also charged to Burton alone; and the report is excepted to because he did not charge it to the three. I am free to say that if the question stood on these facts alone, the liability of the others is very probable, because they could have sued at law on the bond taken to themselves for $420.85; and as to the other, they appointed an agent who had it in his power, by acting as executor, to put them at defiance. But those difficulties are removed by other facts appearing on the report. Those moneys he did apply, under the authority of the other executors, to the payment of debts of the testatrix, except the sum of $78.05. Consequently, nothing was lost by the confidence reposed in him in this respect except the above small balance; and that is more than covered by the commissions allowed him, which makes a balance of $15.01 due him, and applicable to his large debt. Those (58) exceptions are, therefore, overruled.
The exception as to Mr. Burton's account is partly correct, as the commissions allowed are too heavy; but the difference is so inconsiderable as not to induce the Court to interfere in such a way as to alter the state of the accounts of the other executors. It is therefore allowed, to the extent of $15.01, so as to leave the balance due from said Burton of $2,889.50, instead of $2,874.49, as reported; and for the residue it is overruled.